IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD SMILEY | : | |
|     Plaintiff, | | |
| | | |
| v. | : | CIVIL ACTION |
| | | NO. 13-7411 |
| ARTISAN BUILDERS; THE WHEEL- | | |
| CHAIR MAN COMPANY, INC.; and | : | |
| UNITED STATES OF AMERICA c/o | | |
| Attorney General of the United States | | |
|     Defendants. | : | |

**MEMORANDUM**

**Jones, II  J.**                                                                                                          **June 26, 2015**

### I.     Introduction

The within action was initiated on December 18, 2013, when Ronald Smiley and his wife, Marilyn Smiley, filed a Complaint against the government ("USA") alleging negligence under the Federal Tort Claims Act ("FTCA"). On January 29, 2014, Plaintiffs filed an Amended Complaint adding Defendants Artisan Builders ("Artisan")[1] and The Wheelchair Man Company, Inc. ("Wheelchair Man").[2]  In response, Defendant USA filed its initial Motion to Dismiss pursuant to Rule 12(b)(1), claiming in part that the government could not be sued for the actions of its independent contractors, therefore this Court lacked subject matter jurisdiction over any claims relating to same.  USA also sought dismissal of Mrs. Smiley's loss of consortium claim for failure to

---

[1] The parties have since determined that Artisan is no longer in business and is currently engaged in bankruptcy proceedings.  (Def.'s Mot. Dismiss 2 n.3; Pl.'s Resp. Mot. Dismiss 1-2.)

[2] This Court notes that although a Notice of Appearance on behalf of Wheelchair Man was docketed of record on April 21, 2015 (ECF No. 16), neither Artisan nor Wheelchair Man has responded to Plaintiff's Amended Complaint.

1

exhaust administrative remedies. This Court ultimately dismissed Marilyn Smiley's loss of consortium claim and ordered jurisdictional discovery regarding Ronald Smiley's negligence claim, to determine whether Artisan and Wheelchair Man were "independent contractors" for purposes of the FTCA. Upon completion of jurisdictional discovery, USA filed the instant Motion to Dismiss. For the reasons set forth below, USA's Motion shall be granted and Plaintiff's claims against the government shall be dismissed with prejudice.

II.     **Background**

Ronald Smiley lost his leg decades ago while serving in the United States Armed Forces during the Vietnam War. (Am. Compl. ¶ 14.) As a veteran, Mr. Smiley receives medical care and durable medical equipment ("DME") through the Department of Veterans Affairs, Philadelphia VA Medical Center ("VA"). (Am. Compl. ¶¶ 8, 14, 17; Decl. of Gary Woodring ¶ 2.)[3] As his care provider, the VA ordered a motorized wheelchair for Mr. Smiley through Defendant Wheelchair Man and his platform lift through Defendant Artisan. (Def.'s Mot. Dismiss Exs. 1, 2.) On September 23, 2011, Ronald Smiley rode his motorized wheelchair onto the vertical lift that carries him from his front door to street level. (Am. Compl. ¶¶ 15, 23.) However, the lift's locking mechanism failed to engage, and Mr. Smiley fell approximately twelve feet to the street below. (Am. Compl. ¶ 23.) As a result, he allegedly suffered significant spinal and shoulder injuries, as well as emotional harm. (Am. Compl. ¶¶ 26-30.)

Mr. Smiley avers that Defendant Artisan, working at the behest of the VA, was responsible for installing his wheelchair lift that had been purchased from Defendant Wheelchair Man. (Am.

---

[3] The court may review evidence supplemental to parties' pleadings in a 12(b)(1) challenge such as this—factual rather than facial. *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Gotha v. United States*, 115 F.3d 176, 178-179 (3d Cir. 1997)).

2

Compl. ¶¶ 15-16.) Plaintiff further alleges that Artisan modified the lift to accommodate the size of his motorized wheelchair and in the course of modification, "the metal ramp where the lock engages was filed down" and the "safety alarm mechanism was altered." (Am. Compl. ¶¶ 18-20.) Additionally, Mr. Smiley claims the lift was "maintained and serviced" by Defendant Wheelchair Man during the period relevant to this case. (Am. Compl. ¶ 21.)[4]

To initiate the process of providing a patient with DME, the VA staff performs a patient evaluation to ensure that he or she "has adequate cognitive ability" to handle the equipment. (Woodring Decl. ¶ 2.) Next, the VA sends a purchase order to the equipment manufacturer, who then delivers the item to an authorized dealer. (Woodring Decl. ¶¶ 2-3.) This purchase order arrangement exists between the VA and certain businesses because the VA lacks their particular expertise. (Woodring Decl. ¶ 3.) After the authorized dealer receives the equipment, it delivers and installs it at the patient's home. (Woodring Decl. ¶ 4.) The dealer then notifies the VA that the patient received the order. (Woodring Decl. ¶ 4.) The VA does not deliver, install, or inspect any of the equipment or services rendered by the manufacturer or authorized dealer. (Woodring Decl. ¶ 5.)

On April 22, 2010, the VA issued a purchase order to Artisan to install a vertical platform lift at Mr. Smiley's home. (Woodring Decl. ¶ 7; Def.'s Mot. Dismiss, Ex. 1.) Months later, on August 4, 2011, the VA issued another purchase order to Pride Mobility Products Inc. ("Pride") for a new motorized wheelchair for Mr. Smiley. (Woodring Decl. ¶ 8.) On August 26, 2011, through a third purchase order, Wheelchair Man (an authorized Pride dealer) delivered the wheelchair to Mr. Smiley and subsequently notified the VA. (Woodring Decl. ¶ 8; Def.'s Mot. Dismiss, Ex. 2.) Finally, on

---

[2] The purchase orders for the acquisition of the motorized wheelchair and lift do not reflect Wheelchair Man's involvement in the maintenance or servicing of the lift. (Def.'s Mot. Dismiss, Exs. 1, 2.)

September 13, 2011, Wheelchair Man made warranty repairs to the wheelchair and again notified the VA. (Woodring Decl. ¶ 8.)

Melvin Moore, Chief Prosthetics Contract Specialist at the Lebanon Valley VA Medical Center, oversees orders such as those involved herein at several locations, including the Philadelphia VA. (Moore Decl. ¶ 1.) The interactions between the VA and its vendors as described above are typical of the VA's system – the installations proceed according to the manufacturer's requirements, and the equipment becomes the patient's property after delivery. (Moore Decl. ¶ 2.) According to Mr. Moore, approximately 60,000 consults for prosthetic supplies and equipment are generated annually through the Philadelphia VA alone. (Moore Decl. ¶ 3.) He maintains that with such a large number, it would be "impossible" or at least extremely costly to create an individual contract for every purchase. (Moore Decl. ¶ 3.) Therefore, the purchase order system exists in lieu of a contract system and reimburses vendors using a "government-wide commercial purchase card," similar to a credit card. (Moore Decl. ¶ 4) (citing Federal Acquisition Regulations, 48 C.F.R. 13.001 (2015)) ("FAR"). Mr. Moore stated that FAR gives the government the authority to carry out this purchasing arrangement without individual contracts. (Moore Decl. ¶ 5) (citing 48 C.F.R. 12.102(e)(4) (2015) ("Using the Governmentwide [sic] commercial purchase card as a method of purchase rather than only as a method of payment . . .")). In order for a purchase order for "prosthetic equipment" to be processed, a medical staff member at the VA creates a "patient consult" within the prosthetic ordering system. (Moore Decl. ¶ 3.) To provide the patient with the prescribed equipment, the VA then issues purchase order forms to particular vendors or service providers. (Moore Decl. ¶ 4.)

In his deposition, Paul Levin, Founder and President of Wheelchair Man, described in detail his company's arrangement with the VA, which falls in step with Mr. Moore's overview. (Def.'s Ex.

4

C, Levin Dep. 8:6, 9, 13, 23-24, Apr. 28, 2015.) Mr. Levin stated that the VA accounts for less than five percent of the Wheelchair Man's business, most of which comes from hospitals. (Levin Dep. 12:2-8.) Wheelchair Man does not have a contract with the VA but provides services as necessary by way of faxed orders from the VA. (Levin Dep. 10:7-11, 11:11-24, 12:1.) Wheelchair Man would not serve veterans like Mr. Smiley but for the VA purchase orders because it does not work with veterans directly. (Levin Dep. 11:2-5.)

In Mr. Smiley's case, although Wheelchair Man delivered and repaired the motorized wheelchair, it did not install or maintain the lift. (Levin Dep. 16:1-11.) As is customary in this VA-vendor arrangement, Wheelchair Man arranged the delivery directly with Mr. Smiley. (Levin Dep. 19:15-24.) When Wheelchair Man completes a job such as this, it sends the VA a service order with a fee. (Levin Dep. 22:10-13.) In return, the VA sends paperwork with the government credit card number and payment authorization. (Levin Dep. 22:14-21, 23:1-5.) The VA does not help to assemble the equipment, does not supervise, pay, or set the hours of Wheelchair Man employees, and does not provide office space, supplies, or equipment for the company. (Levin Dep. 19:13-24, 23: 9-22.)

### III.  Standard of Review

A motion brought pursuant to Fed.R.Civ.P. 12(b)(1) implicates a court's "very power to hear the case." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir.2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A Rule 12(b)(1) motion may take the form of either a facial or factual challenge to a plaintiff's complaint. *Tucker v. Sec'y of HHS*, 487 F. App'x 52, 54 (3d Cir. 2012) (citing *Mortensen,* 549 F.2d at 891). In the event of a factual challenge—as in the instant case— the court may consider "affidavits, depositions, and testimony to

resolve factual issues bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997) (citing *Mortensen*, 549 F.2d at 891). In conducting this assessment, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. Furthermore, "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*[5]

The Motion to Dismiss currently before this Court turns on a factual issue—whether Artisan and Wheelchair Man are "independent contractors" of Defendant USA. *See Norman v. United States*, 111 F.3d 356, 357 (3d Cir. 1997) (affirming district court's dismissal for lack of subject matter jurisdiction based on the determination that the tortfeasor was an independent contractor); *Smith v. Steffens*, 429 F. Supp. 2d 719, 721, 723 (E.D. Pa. 2006) (dismissing case against United States after finding that a company hired to manage the property at issue was an independent government contractor).

---

[5] Plaintiff contends this Court "must not allow its consideration of jurisdiction to spill over into a determination of the merits of the case, and thus must tread lightly in its consideration of the facts concerning jurisdiction." (Pl.'s Resp. Mot. Dismiss 4.)  In so arguing, Plaintiff clearly misconstrues the inherent power of this Court.  *See* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court ***must*** dismiss the action.") (emphasis added); *see also CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008) (recognizing that "where jurisdiction is intertwined with the merits of an FTCA claim . . . a district court must take care not to reach the merits of a case when deciding a Rule 12(b)(1)  motion.  Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations.") (internal citation omitted); *International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.,* 673 F.2d 700, 711 (3d Cir. 1982) (when assessing subject matter jurisdiction via a 12(b)(1) motion that is "supported by a sworn statement of facts . . . the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  Until it has done so, and until it has determined that such power is vested in the court, any judgment rendered by the district court would be subject to attack on review, and indeed if jurisdiction was there found lacking, would be a nullity.") (internal citations omitted).

## IV. Discussion

The FTCA affords exclusive jurisdiction to the district courts over claims brought against the government for negligent acts or omissions by its employees. 28 U.S.C. § 1346(b)(1). The Act, a limited waiver of sovereign immunity, excludes governmental liability for independent contractors. 28 U.S.C. § 2671. *See also United States v. Orleans*, 425 U.S. 807, 813 (1976) (holding that independent contractors are not government employees for purposes of the FTCA). Therefore, under the "independent contractor exception," as it is commonly called, USA cannot be held liable for the negligent actions or omissions of an independent contractor. 28 U.S.C. § 2671. *See also Bailey v. U.S. Marshals Serv. Headquarters*, 426 F. App'x 44, 46 (3d Cir. 2011) ("An action may be brought under the FTCA only if the alleged tortfeasor is an employee of the United States; suits against independent contractors are not viable.") (citing *Norman*, 111 F.3d at 357).

This determination of whether a party is an independent contractor or a government employee is at the crux of many FTCA cases and requires a fact-intensive determination. The alleged tortfeasor is considered an employee, not a contractor, of the USA where the government has the "power to control the detailed physical performance of the contractor." *Logue v. United States*, 412 U.S. 521, 528 (1973) (establishing the standard for distinguishing between employees and independent contractors based on whether the principal controls the "detailed physical performance" of the contractor). *See also Orleans*, 425 U.S. at 814, 819 (applying standard and concluding local entities and their employees were independent contractors ); *Bailey*, 426 F. App'x at 46 (applying standard and concluding prison workers were independent contractors); *Moreno v. United States*, 387 F. App'x 159, 160 (3d Cir. 2010) (applying standard and concluding prison medical providers were independent contractors); *Norman*, 111 F.3d at 357 (applying standard and concluding maintenance

provider for federal building was independent contractor); *Smith*, 429 F. Supp. 2d at 721 (applying standard and concluding management company for HUD was independent contractor). The question of government control over a contractor hinges on whether the "day-to-day operations" are supervised by the government. *Orleans*, 425 U.S. at 815; *Norman*, 111 F.3d at 357; *Dugan*, 96 F. Supp. 2d at 483. Ordinarily, the court arrives at this determination by examining the contract terms agreed upon by the parties. *See Bailey*, 426 F. App'x at 46 (assessing government's agreement with jail); *Norman*, 111 F.3d at 358-59 (assessing contractual language between government and maintenance company); *Nazzaro v. United States*, 304 F. Supp. 2d 605, 617 (D. N.J. 2004) ("In order for the independent contractor exception to be relevant, there must be a contract between the United States and [another party] that requires [said party] to perform some type of service for the government."); *Dugan*, 96 F. Supp. 2d at 484 (holding that subject matter jurisdiction was established where a contract dictated that "responsibility for inspecting for and supervising the clean-up of spills and wet spots . . . lay with the United States.").

Broad governmental oversight is not sufficient to elevate a government vendor or service provider from independent contractor to employee status for the purpose of the FTCA. *Orleans*, 425 U.S. at 817-18 (finding that compliance with federal regulations, including employment and accounting policies and procedures did not indicate employment beyond that of an independent contractor); *Logue*, 412 U.S. at 529-30 (holding that an entity was an independent contractor where the government had the right to enter and inspect a jail but no authority to "physically supervise" its operation); *Gibson v. United States*, 567 F.2d 1237, 1242 (3d Cir. 1977) ("The fact of broad, supervisory control, or even the potential to exercise detailed control, cannot convert a contractor into an agent, nor can it be the basis for imposing vicarious liability on the United States."); *Smith*,

429 F. Supp. 2d at 722 (finding that "limited oversight power" by the government is not sufficient to hold it accountable for day-to-day control of a contractor).

However, the government may face FTCA liability where it is directly involved in the action at issue and where it has significant control over the situation. See *Toole v. United States*, 588 F.2d 403, 404-05 (3d Cir. 1978) (finding the government negligent where the it had a contractual duty to warn of a specific danger, had knowledge of that danger, and yet remained silent); *Nazzaro*, 304 F. Supp. 2d at 617 (determining that the "independent contractor exception" does not apply where no contract existed and where the government licensed the plaintiff to use the recreational property where the injury occurred); *Dugan*, 96 F. Supp. 2d at 484 (finding that subject matter jurisdiction existed in a slip and fall case where a contract specifically outlined government responsibility for "inspecting and supervising the clean-up of spills and wet spots").

In its Opinion granting the parties time for jurisdictional discovery, this Court stated: "Without any objective documentation of agreements or contracts between the United States, Artisan and Wheelchair Man, this Court is unable to render a decision regarding independent contractor status." (ECF No. 14 at 5.) Despite having been given an opportunity to provide the court with same, Plaintiff has failed to do so; evidence to demonstrate the existence of the requisite contractual relationship between USA and its servicing companies is completely absent from the record.

In a Declaration made by Chief Prosthetics Contract Specialist Melvin Moore, he stated that FAR governs these transactions between the government Wheelchair Man and Artisan. (Moore Decl. 5.)  FAR defines a contract as:

> [A] mutually binding legal relationship obligating the seller to furnish the supplies or services . . . and the buyer to pay for them.  It includes all types of commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing. In addition to bilateral instruments, contracts

include (but are not limited to) awards and notices of awards; job orders or task letters issued under basic ordering agreements; letter contracts; orders, such as purchase orders, under which the contract becomes effective by written acceptance or performance; and bilateral contract modifications.

48 C.F.R. 2.101.

Hence, by definition, FAR allows for the substitution of purchase orders as contracts. Mr. Moore explained that the purchase order system is an efficient alternative to individual contracts between the government and its service providers. (Moore Decl. ¶¶ 3-4.) Defendant USA has presented this Court with the purchase orders for Mr. Smiley's equipment. (Def.'s Mot. Dismiss Ex. 1 (Purchase Order No. Q0B642 between the VA and Artisan for Mr. Smiley's "porch lift"); Ex. 2 (Purchase Order No. Q1X074 between the VA and Wheelchair Man for the delivery and set-up of Mr. Smiley's motorized wheelchair).) Although the purchase orders contain language regarding confidentiality, they are otherwise devoid of any language pertaining to the relative responsibilities of the government and its service providers.

Plaintiff has failed to demonstrate that the USA assigned itself responsibility for oversight or quality maintenance of the ordered products. Plaintiff has similarly failed to provide this Court with any facts to show that the USA has the "power to control the detailed physical performance of the contractor." *See Logue*, 412 U.S. at 528; *Orleans*, 425 U.S. at 814; *Bailey*, 426 F. App'x at 46; *Moreno*, 387 F. App'x at 160; *Norman*, 111 F.3d at 357; *Smith*, 429 F. Supp. 2d at 721. Further, Plaintiff has failed to demonstrate that the USA supervises the "day-to-day operations" of Artisan or Wheelchair Man. *Orleans*, 425 U.S. at 815; *Norman*, 111 F.3d at 357; *Dugan*, 96 F. Supp. 2d at 483.

In his Declaration, Mr. Woodring stated that the VA "does not participate in the delivery or installation process, and the [VA] does not inspect the equipment or its installation in the patient's home, as the [VA] does not have any expertise to do so." (Woodring Decl. 5.) Moreover, the VA

"had no involvement" in the delivery or repair of Mr. Smiley's motorized wheelchair and it "does not exercise control over the daily workings" of its medical equipment providers. (Woodring Decl. 6.)

The Declaration by Mr. Moore similarly stated that the VA had no involvement with carrying out Mr. Smiley's medical equipment order aside from issuing the purchase order and receiving notification that the work was complete. (Moore Decl. ¶¶ 6, 7.) Further solidifying this point, Mr. Levin stated in his deposition that the VA does not help to assemble the equipment, does not supervise, pay, or set the hours of Wheelchair Man employees, and does not provide office space, supplies, or equipment for the company. (Levin Dep. 19:13-24; 23: 9-22.)

Every documented characterization of the arrangement between Defendant USA and its service providers, Artisan and Wheelchair Man, indicates that these two companies were independent government contractors; not employees of the USA. The declarations, deposition, and purchase orders submitted to this Court indicate that the USA did not control the "detailed physical performance" or "day-to-day operations" of Artisan or Wheelchair Man. *Norman*, 111 F.3d at 357.

Plaintiff stresses the glaring absence of a formal contract between the USA and its vendors and argues that a "reasonable mind . . . would have to assume . . . that Defendant USA engaged in some level of investigation and competitive bidding process" to determine who should furnish equipment to patients such as Mr. Smiley. (Pl.'s Resp. 5, 7.) However, it is Plaintiff's burden to prove subject matter jurisdiction (here, by showing that Defendants Artisan and/or Wheelchair Man were employees rather than independent contractors of the Defendant USA) and he has utterly failed to do so. Argument, supposition and a recitation of legal theories does not suffice. As such, this Court is left with absolutely no evidence to demonstrate that the level of any control by the

government over Artisan and Wheelchair Man rose above minimal oversight. As discussed above, limited supervision is not sufficient to establish that a party is a government employee rather than an independent contractor. *See, e.g., Orleans*, 425 U.S. at 817-18 (finding that compliance with federal regulations, including employment and accounting policies and procedures did not indicate employment beyond that of an independent contractor).[6]

In view of the foregoing, Plaintiff has not met his burden of demonstrating that Artisan and Wheelchair Man were not independent contractors. Accordingly, USA cannot be held liable for Artisan or Wheelchair Man's acts or omissions under the "independent contractor exception" of the FTCA and this Court lacks jurisdiction over Plaintiff's claims against USA.

---

[6] Plaintiff further argues that "basic agency law applies" therefore "an employer can be responsible for the negligent acts of an independent contractor." (Pl.'s Resp. 6.) Elaborating on this argument, Plaintiff alleges that Defendant USA must have engaged in some process to choose its service providers and did not "use due care" in choosing such agents. (*Id.* at 7.) Contrary to Plaintiff's assertion, "basic agency law" does not apply to the government with respect to independent contractors— this is inherent in the FTCA, which serves as a limited exception to the government's sovereign immunity. *See Orleans*, 425 U.S. at 814 ("Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver.").

## V. Conclusion

Plaintiff Ronald Smiley has failed to provide this Court with any facts or documentation to demonstrate that Defendant USA controlled the "detailed physical performance" or "day-to-day operations" of Artisan or Wheelchair Man during the relevant time period. Accordingly, this Court concludes that these companies were independent contractors rather than government employees. Because Defendant USA cannot be held liable for the actions of its independent contractors, this Court does not have subject matter jurisdiction over Plaintiff's claims against the government. Therefore, Defendant USA's Motion to Dismiss shall be granted and Plaintiff Ronald Smiley's claims against said Defendant shall be dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II   J.